UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**      'O'

| Case No. | 2:17-cr-00229(A)-CAS - 1 | Date | July 30, 2018 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Laura Elias | Sheila Nagaraj |
| | | Patricia Donahue |
| *Deputy Clerk* | *Court Reporter / Recorder, Tape No.* | *Assistant U.S. Attorneys* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| FELIX CISNEROS, JR. | X | | X | Mark Werksman | X | | X |

**Proceedings:**    DEFENDANT FELIX CISNEROS'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR NEW TRIAL (Dkt. 106, filed May 7, 2018)

## I. INTRODUCTION

On December 19, 2017 defendant Felix Cisneros, Jr. was charged in a First Superseding Indictment ("Indictment") with conspiracy to aid or assist entry of an alien convicted of an aggravated felony in violation of 18 U.S.C. §§ 371, 1327 (Count 1); acting as an agent on behalf of another in a covered matter affecting the United States in violation of 18 U.S.C. §§ 205(a)(2), 216(a)(2) (Count 2); falsification of records in violation of 18 U.S.C. § 1519 (Count 3); making false statements in violation of 18 U.S.C. § 1001 (Counts 4–5); tampering with a victim, witness, or informant and obstruction of justice in violation of 18 U.S.C. § 1512(b)(3) (Counts 6–7). Dkt. 60.

Trial commenced on April 17, 2018. Following a four-day trial, the jury found defendant guilty on Counts 1–4 and not guilty on Counts 6–7 of the Indictment.[1] Dkt. 102. On May 7, 2018, defendant filed the instant motion for judgment of acquittal or, in the alternative, for a new trial. Dkt. 106 ("Motion"). On July 2, 2018, the government filed an opposition, dkt. 118 ("Opp'n"); and defendant filed a reply on July 16, 2018, dkt. 119 ("Reply"). Having carefully considered the parties' arguments, the Court finds and concludes as follows.

---

[1] The Court dismissed Count Five without prejudice on April 18, 2018, based on the government's unopposed motion to dismiss that count. Dkt. 79.

## II. BACKGROUND

Defendant was a Special Agent of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The Indictment alleges that defendant used his official position and access to restricted law enforcement information to assist Santiago Garcia–Gutierrez ("Garcia"), a lawful permanent resident who had sustained several criminal convictions rendering him inadmissible, in traveling back and forth from the United States to Mexico to conduct business on behalf of Levon Termendzhyan ("Termendzhyan"). Defendant contacted DHS Customs and Border Protection ("CBP") officers and requested that they return Garcia's passport and allow him to be paroled into the United States even though defendant allegedly knew Garcia was an inadmissible alien.

In July 2013, CBP offices at LAX seized Garcia's passport based on an outstanding arrest warrant. In September 2013, defendant intervened with CBP Officer Gloria Velasquez ("Officer Velasquez") to request the return of Garcia's passport so that Garcia could fly to Mexico in September 2013. When Garcia returned to the United States, defendant contacted CBP officers to assist Garcia in obtaining an extension of his "parole," which allowed Garcia to remain in the United States pending resolution of his immigration status. Garcia had sustained several prior criminal convictions that CBP concluded would render him inadmissible. The Indictment alleges defendant knew about these convictions because in April 2013 he queried Garcia's name in TECS, a DHS law enforcement sensitive database. The Indictment alleges that defendant subsequently concealed his actions by failing to disclose his relationship with Garcia on a questionnaire, the "SF-86" form, which he completed as part of a background investigation routinely required for federal employees with security clearances.

In its case-in-chief, the government called 12 witnesses and introduced numerous exhibits into evidence, including excerpted audio recordings, e-mails, and text messages. Retired DHS Office of Inspector General ("OIG") Special Agent Leonard V'Dovec ("SA V'Dovec") testified regarding his review of defendant's TECS queries during the relevant time frame. DHS Special Agent Chad Steel ("SA Steel") testified regarding the search of Garcia's iPad, which yielded hundreds of text messages sent by defendant to Garcia in the fall of 2013 through early 2014, revealing defendant's ongoing efforts to assist Garcia in obtaining his passport and extending his parole status. The text messages also showed that defendant and Garcia attended a baseball game together with defendant's son.

CBP Officer Aaron Lombrano ("Officer Lombrano") testified that in September 2013, he received emails from defendant at his work account, requesting that CBP extend parole for Garcia. Based on the emails exchanged with defendant, Officer Lombrano concluded that there was "some sort of official business relationship between" defendant and Garcia, possibly that Garcia was working as an informant for defendant. CBP Officer Jimmy Oetjen ("Officer Oetjen") testified that on October 18, 2013, Garcia appeared at a CBP office in Los Angeles.

Officer Oetjen extended Garcia's parole status to allow him to remain in the United States pending his immigration proceedings. During their meeting, Garcia told Officer Oetjen that Garcia was "working for you guys," meaning DHS. When Oetjen asked Garcia who he worked for, Garcia provided him with defendant's phone number and instructions to call defendant.

Officer Velasquez testified regarding the emails she exchanged with defendant in August and September 2013, in which defendant requested that she return Garcia's passport and subsequently that Garcia's parole be extended. Officer Velasquez stated that she would have returned the passport in only one of three circumstances, two of which did not apply to Garcia, and the last being that Garcia was working as an informant for defendant. Although defendant never explicitly ordered Officer Velasquez to return the passport, she testified that, based on the information she had in her possession and absent defendant's intervention on Garcia's behalf, she would not have returned Garcia's passport.

Office of Personnel Management ("OPM") Regional Director Kiral Thompson ("OPM Director Thompson") testified about the importance of government forms for prospective and current government employees, including the SF-86. He explained that the questions are designed to obtain as much information about the subject's background and contacts within the indicated period. In particular, with respect to the SF-86's questions regarding contacts with foreign nationals, he testified that these questions carry special weight because the government has a demonstrated interest in ensuring its employees are not subject to corruption by foreign individuals or interests.

The government introduced several audio recordings into evidence, including excerpted conversations between the defendant and Garcia during 2016, as well as defendant's post-arrest statement from March 2017. In the conversations between defendant and Garcia, defendant acknowledged the assistance he had provided Garcia in entering the United States, and when Garcia asked if defendant would help him again, defendant stated "it won't happen the same way" because "there's too much f[…]ing dirt after the fact." Defendant added that he knew people who could help Garcia cross the border and warned Garcia that if Garcia said anything about what defendant had done for him, defendant would "bury" him.

During defendant's post-arrest interview on March 22, 2017, defendant admitted to Federal Bureau of Investigation ("FBI") Special Agent Brian Adkins ("SA Adkin") and SA V'Dovec that Garcia had never been an informant for defendant and that defendant asked CBP officers to return Garcia's passport so that he could travel internationally to conduct business on behalf of Termendzhyan. Defendant also admitted that at the time he conducted his TECS queries regarding Garcia, defendant knew that Garcia had prior criminal convictions that rendered him inadmissible.

The government also introduced into evidence emails from defendant to CBP Officers Velasquez and Lombrano asking that the officers return Garcia's passport, thus allowing him to

travel to and from Mexico in the fall of 2013. In addition, numerous text messages sent from defendant to Garcia in late 2013 through early 2014 were introduced into evidence, indicating defendant's ongoing efforts to assist Garcia with his immigration issues and the nature of their personal relationship.

## III.  MOTION FOR JUDGMENT OF ACQUITTAL

Defendant moves pursuant to Federal Rule of Criminal Procedure 29 for a judgment for acquittal on Counts 2–4 of the Indictment on the ground that there was insufficient evidence to sustain a conviction as to each of those counts. Mot. at 6–24.

### A.   Federal Rule of Criminal Procedure 29

Rule 29 provides that "the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c). Courts reviewing a motion for judgment of acquittal under Rule 29(c) apply the same test as a challenge to the sufficiency of the evidence. United States v. Ladum, 141 F.3d 1328, 1337 (9th Cir. 1998). When considering a motion for judgment of acquittal, the Court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hursh, 217 F.3d. 761, 767 (9th Cir. 2000). This is a two-step process: "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "The hurdle to overturn a jury's conviction based on a sufficiency of the evidence challenge is high." United States v. Rocha, 598 F.3d 1144, 1153 (9th Cir. 2010). "[A]ny conflicts in the evidence are to be resolved in favor of the jury's verdict." United States v. Alvarez-Valenzuela, 231 F.3d 1198, 1201–02 (9th Cir. 2000).

### B.   Count Two:  Acting as an Agent on Behalf of another Person in a Covered Matter in Violation of 18 U.S.C. § 205(a)(2)

Defendant contends that a judgment of acquittal should be entered on Count Two because there was insufficient evidence that he knowingly and willfully acted as an agent of another person in a covered matter in violation of 18 U.S.C. § 205(a)(2). In particular, defendant argues that section 205(a)(2) incorporates the common law definition of "agent" and the government failed to establish that an agency relationship existed between defendant and Garcia. Mot. at 5–15.

Section 205 is one of a related group of conflict-of-interest statutes found at 18 U.S.C. §§ 202–209, which were enacted by Congress in an effort "to secure the integrity of executive action against undue influence on the part of members of governmental branches." Athridge v.

Quigg, 655 F. Supp. 779, 781 (D.D.C. 1987). Section 205(a)(2) subjects federal employees to criminal or civil penalties if the employee "acts as an agent or attorney for anyone before any department [or] agency . . . in connection with any covered matter in which the United States is a party or has a direct and substantial interest." 18 U.S.C. § 205(a)(2). A "covered matter" is defined as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter." Id. § 205(h).

The statute does not define the term "agent." In O'Neill v. Dep't of Hous. & Urban Dev., 220 F.3d 1354 (Fed. Cir. 2000), the Federal Circuit applied the "principle of statutory construction that '[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.' " Id. at 1360 (quoting NLRB v. Amax Coal Co., 453 U.S. 322, 329 (1981)). This "rule applies with particular force to criminal statutes because of the related principles that courts may not create crimes and that criminal statutes must be strictly construed in favor of lenity." Id. The court noted that the term "agent" has a well-established meaning at common law:

> Agency "is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Restatement (Second) of Agency* § 1 (1958). An agent acting on behalf of his principal has the authority to "alter the legal relations between the principal and third persons," *id.* § 12, and a "principal has the right to control the conduct of the agent with respect to matters entrusted to him," *id.* § 14. Thus, proof of actual or apparent authority, *see id.* § 8, to act on behalf of the principal is necessary to establish that a person acts as an agent both under the common-law and, as we construe it, under section 205(a)(2).[2]

O'Neill, 220 F.3d at 1361 (footnote added). The Federal Circuit explained that this narrow construction of the term "agent" in section 205(a)(2) is also supported by the statute's legislative history, the structure of section 205, and an examination of several related conflict-of-interest statutes. See id. at 1361–63.

O'Neill did not involve a criminal prosecution. Rather, a former employee of the Department of Housing and Urban Development ("HUD") appealed a decision of the Merit Systems Protection Board ("MSPB") upholding her removal by HUD for, among other charges, violating section 205(a)(2). Id. at 1356. O'Neill, a typing clerk, contacted various officials at

---

[2] "Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Restatement (Second) of Agency § 8 (1958).

HUD and related agencies "to urge them to look favorably on a housing proposal by a non-profit organization," Altamont, which was "interested in acquiring military housing" at a soon-to-be-closed military base in order "to provide shelter for homeless men." Id. at 1356–57. The officials testified before an administrative judge that O'Neill "advocated very heavily" for Altamont and represented that she was "working with Altamont" on the proposal. Id. at 1358. Applying the common law definition of "agent," the Federal Circuit concluded the MSPB erred in finding that O'Neill acted as an agent under section 205(a)(2), "because the government presented no evidence that [she] had actual or apparent authority to act on behalf of Altamont." Id. The evidence established that "O'Neill purported to represent the interests of Altamont" but there was no evidence that "her purported representation was authorized, either actually or apparently." Id.

Relying on O'Neill, defendant argues that the jury was not present with sufficient evidence to find that an agency relationship existed between himself and Garcia. Mot. at 13. Defendant indicates that, for example, he never ordered Officer Velasquez to admit Garcia into the country or represented that he had a formal relationship with Garcia or represented Garcia's interests. Defendant also suggests there is insufficient evidence that he was being controlled and directed by Garcia. Id. at 14. Although defendant may have "assisted" Garcia, he contends the government failed to present evidence that an actual agency relationship was formed. Id. at 15. The government, on the other hand, argues that a reasonable juror could have readily found the existence of an agency relationship based on the following actions: (1) defendant contacted CBP officers (including by using his official government email) and expressly requested that the officers return Garcia's passport and extend his parole; (2) defendant and Garcia exchanged messages leading up to and after Garcia's travel to Mexico; and (3) defendant conducted TECS queries regarding Garcia to ascertain his travel dates and his legal status. Opp'n at 14. Based on the nature and depth of the contact between defendant and Garcia, the government argues that a reasonable juror could find that defendant was acting as an agent on Garcia's behalf. Id. at 15.

Considering the evidence in the light most favorable to the government, the Court concludes a rational juror could have found that defendant acted as an "agent" for Garcia under section 205(a)(2). By contacting CPB officers to request the return of Garcia's passport and to have his parole extended, defendant's conduct evidenced that he was acting on behalf of Garcia. In addition, and in contrast to O'Neill, the government presented evidence that defendant had actual or apparent authority to act on behalf of Garcia. In O'Neill, there was no evidence that the employee's "representation was authorized, either actually or apparently" by Altmont. 220 F.3d at 1358. Here, on the other hand, the government introduced evidence of communications between defendant and Garcia demonstrating that defendant had actual authority to represent Garcia's interests before CBP. Although most of Garcia's text messages to defendant were not recovered, their ongoing communication at least circumstantially shows that Garcia consented to defendant acting on his behalf. Moreover, there is evidence that reasonably supports a

finding of apparent authority. Officer Oetjen testified that Garcia said he was "working for you guys," meaning DHS—and, when asked who he worked for, Garcia provided defendant's phone number and instructed the officer to call defendant. A reasonable juror could find that this conduct supplied a basis for the officer to believe that Garcia had authorized defendant to act on his behalf. See NLRB. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity, 124 F.3d 1094, 1099 (9th Cir. 1997) ("Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question.").

Accordingly, the Court finds sufficient evidence that defendant acted as Garcia's "agent" within the meaning of section 205(a)(2) to affirm the jury's verdict on Count Two.

### C.  Count Three: Falsification of Records in Federal Investigation in Violation of 18 U.S.C. § 1519

Defendant moves for a judgment of acquittal on Count Three of the Indictment because there was insufficient evidence that (1) defendant knowingly made a false entry on the SF-86 form and (2) did so with the intent to impede, obstruct or influence an actual or contemplated investigation. Mot. at 15–23. Defendant was charged and convicted of violating 18 U.S.C. § 1519 by checking "no" in response to the following question in Section 19 of the SF-86: "Do you have, or have you had, close and/or continuing contact with a foreign national within the last seven (7) years with whom you, or your spouse, or cohabitant are bound by affection, influence, common interests, and/or obligation?" The government charged that defendant, in fact, knew at the time that he had close and continuing contact within the previous seven years with Garcia, a foreign national, with whom defendant was bound by affection, influence, common interests, and obligation. Indictment at 10.

Section 1519 provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519. To prove a violation of section 1519, the government must show that the defendant (1) knowingly falsified or a made a false entry (2) in any record or document, (3) with the intent to obstruct an actual or contemplated federal investigation. See United States v. Katakis, 800 F.3d 1017, 1023 (9th Cir. 2015). Section 1519 was written "to apply broadly" and to "close loopholes in the existing criminal laws relating to the destruction or fabrication of evidence." S.Rep. No. 107–146, at 14 (2002). The statute "covers conduct intended to impede

any federal investigation or proceeding *including one not even on the verge of commencement*." Valenzuela Gallardo v. Lynch, 818 F.3d 808, 836 (9th Cir. 2016) (emphasis in original) (internal quotation marks and citation omitted).

> 1. **Sufficient Evidence Supports the Jury's Finding that Defendant Knowingly Made a False Entry on the SF-86**

Defendant first argues that the language of the foreign contacts question on the SF-86 is so ambiguous that no rational juror could find he knowingly made a false entry when he checked "no" in response. Mot. at 16–20. The Ninth Circuit's opinion in United States v. Culliton, 328 F.3d 1074 (9th Cir. 2003) is instructive. In Culliton, the court addressed a challenge to the defendant's conviction for making false statements in violation of 18 U.S.C. § 1001 on the ground that because a question was vague, the defendant could not have acted knowingly when he falsely answered it. Id. at 1078. The court explained that "[g]enerally speaking, the existence of some ambiguity in a falsely answered question will not shield the respondent from a perjury or false statement prosecution. It is for the jury to decide in such cases which construction the defendant placed on a question." Id. (citations omitted). However, if a question is "excessively vague" or "fundamentally ambiguous," the "answer may not, as matter of law, form the basis of a prosecution for perjury or false statement." Id. (quotation marks and citations omitted). "A question is fundamentally ambiguous when 'men of ordinary intelligence' cannot arrive at a mutual understanding of its meaning." Id. (quoting United States v. Boone, 951 F.2d 1526, 1534 (9th Cir. 1991)). In determining whether a question is "fundamentally ambiguous," courts "must consider the context of the question and [defendant's] answers, as well as other extrinsic evidence related to his understanding of the questions posed" in the form. Id. at 1079.

Defendant contends that the foreign contacts question on the SF-86 is "fundamentally ambiguous" because it contains broad and undefined terms such as "close and/or continuing contact" and "bound by affection, influence, common interests, and/or obligation." Reply at 14–15. In support of this argument, defendant cites recent news articles regarding the failure of various high-level government officials to disclose their foreign contacts on the SF-86, in addition to a blog post by a former DHS official who notes that the form is notoriously difficult and that the foreign contacts question is "deeply ambiguous." Id. at 18 (citations omitted). The government notes, however, that the "the existence of some ambiguity in a falsely answered question" does not preclude a false statement charge, as "[i]t is for the jury to decide in such cases which construction the defendant placed on a question." Culliton, 328 F.3d at 1078. Here, the government maintains that it introduced sufficient evidence at trial from which any rational juror could find, beyond a reasonable doubt, that defendant knowingly made a false entry on the SF-86. Opp'n at 19–24.

The Court does not consider the foreign contacts question on the SF-86 "fundamentally ambiguous" so as to bar a false statement prosecution as a matter of law. See United States v. Polos, No. 15 CR. 692 (PGG), 2017 WL 495507, at *9 (S.D.N.Y. Feb. 6, 2017) (finding "no ambiguity in the 'contact with foreign nationals' question" on the SF-86). The Court also finds sufficient evidence from which a rational juror could conclude that when defendant completed the form in August 2014 (1) he knew Garcia was foreign national, (2) he was "bound by affection, influence, common interests and/or obligation" to Garcia, and (3) he had "close and/or continuing contact" with Garcia within seven years before he completed the form. First, based on defendant's experience and knowledge of Garcia's immigration status, a reasonable juror could find that defendant knew Garcia was a foreign national. Second, the evidence shows defendant made a concerted effort to facilitate Garcia's travel to Mexico and to extend his parole when he returned. In text messages, defendant also refers to Garcia as "compadre," a term of endearment, and discussed his family and Christmas presents. Defendant also took his son to a baseball game with Garcia, who paid for their tickets. Based on this evidence, a reasonable juror could conclude that they had "common interests" in resolving Garcia's immigration issues and that they were "bound by affection" based on their personal relationship. A reasonable juror could also conclude based on defendant's persistent efforts on behalf of Garcia that defendant was bound to Garcia "by influence." Finally, between August 2013 and January 2014, defendant and Garcia communicated by phone and text message more than 150 times. A reasonable juror could therefore conclude that defendant had "close and/or continuing contact" with Garcia during this time period.

### 2. Sufficient Evidence Supports the Jury's Finding that Defendant Acted with the Intent to Obstruct a Federal Investigation

Defendant contends that even if he had "close and/or continuing contact" with Garcia and was "bound" to him "by affection, influence, common interests, and/or obligation," there was still insufficient evidence that he acted with specific intent to obstruct an actual or contemplated investigation in violation of 18 U.S.C. § 1519. Mot. at 20–23.

Section 1519 criminalizes knowingly making a false entry in any record or document "with the intent" to obstruct any actual or contemplated federal investigation. 18 U.S.C. § 1519; Katakis, 800 F.3d at 1023. This scienter requirement eliminates "concerns regarding statutory vagueness." Valenzuela Gallardo, 818 F.3d at 828. "Specifically, '[b]ecause a defendant will be convicted for violating § 1519 only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.' " Id. (quoting United States v. Moyer, 674 F.3d 192, 212 (3d Cir. 2012)) (internal quotations omitted). However, section 1519 applies broadly, covering conduct "intended to impede any federal investigation or proceeding including one not even on the verge of commencement." Yates, 135 S.Ct. at 1087; see also United States v. Gray, 642 F.3d 371, 379 (2d Cir. 2011) ("§ 1519 does not require the existence

or likelihood of a federal investigation."); Moyer, 674 F.3d at 210 (the government is not required to prove that defendant "intended to obstruct or impede a specific federal investigation.").

Defendant argues that when he completed the SF-86 in August 2014, he "was not even aware, and could not possibly contemplate that he may one day be investigated in relation to his association with Garcia." Mot. at 22. Defendant contends there is "no evidence that the investigation" into his relationship with Garcia "was even contemplated" at that time. Id. However, the government is not required to prove that defendant "intended to obstruct or impede a specific federal investigation." Valenzuela Gallardo, 818 F.3d at 828 (quoting Moyer, 674 F.3d at 210). A reasonable juror could find that when defendant completed the SF-86 in August 2014, defendant knew he was the subject of a background investigation, which are routinely required for federal employees with security clearances. The SF-86 instructions state:

> All questions on this form must be answered completely and truthfully in order that the Government may make the determinations described below on a complete record. . . . This form will be used by the . . . government in conducting background investigations, reinvestigations, and continuous evaluations of persons under consideration for, or retention of, national security positions . . . and for individuals requiring eligibility for access to classified information.

Mot., Ex. A at 2. The instructions further state: "In addition to the questions on this form, inquiry is also made about your adherence to security requirements, honesty and integrity, vulnerability to exploitation or coercion, falsification, misrepresentation, and other behavior, activities or associations that tend to demonstrate a person is not reliable, trustworthy, or loyal." Id. at 3. Based on these instructions, and defendant's years of experience as a DHS special agent, a reasonable juror could conclude that defendant knew the purpose of the SF-86, knew that his actions with respect to Garcia were not authorized, and knew that disclosure of his relationship with Garcia could adversely affect his background investigation. Thus, a reasonable juror could find beyond a reasonable doubt that defendant acted with the intent to obstruct a federal investigation.

Accordingly, the Court finds sufficient evidence to sustain the jury's verdict on Count Three of the Indictment.

### D. Count Four: Making False Statements in Violation of 18 U.S.C. § 1001

Defendant was charged and convicted on Count Four of the Indictment with violating 18 U.S.C. § 1001 by knowingly and willfully making a materially false statement on the SF-86 by omitting his relationship with Garcia. Section 1001 provides in pertinent part that "whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully makes any materially false,

fictitious, or fraudulent statement or representation" has violated the law. 18 U.S.C. § 1001(a)(2). "The government must prove five elements to obtain a conviction for making a false statement under § 1001: (1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction." United States v. Camper, 384 F.3d 1073, 1075 (9th Cir. 2004) (citing Boone, 951 F.2d at 1544).

In challenging his conviction under section 1001, defendant advances the same arguments regarding falsity and scienter that were addressed with respect to his conviction under section 1519. First, defendant argues that the foreign contacts question on the SF-86 is so ambiguous as to make it "impossible for the government to prove" that he made a "false statement" in connection with his relationship with Garcia. Mot. at 24. For the reasons explained above, however, the Court concludes that the question was not "fundamentally ambiguous" and a reasonable juror could have concluded beyond a reasonable doubt that defendant made a false statement. Second, defendant argues that the government failed to present evidence of his specific intent to make a false statement. Mot. at 24–25. "To willfully make a false statement under § 1001, the defendant must have the specific intent to make a false statement. Specific intent does not require evil intent, but only that the defendant act deliberately and with knowledge." United States v. Heuer, 4 F.3d 723, 732 (9th Cir. 1993) (internal citations and quotation marks omitted). Again, based on the evidence presented a trial, a reasonable juror could find beyond a reasonable doubt that defendant acted deliberately and with knowledge when he omitted his relationship with Garcia on the SF-86.

Finally, defendant argues the government failed to prove that his false statement was material. Mot. at 25. "The materiality requirement . . . is satisfied if the statement is capable of influencing or affecting a federal agency." Boone, 951 F.2d at 1545. But the government is not required to prove that the false statement "actually influenced the government agency." Id. Defendant contends it is "unclear" how his response to the foreign contacts question on the SF-86 "could possibly have been capable of influencing" the investigation because he openly queried TECS regarding Garcia, and DHS was privy to this information. Mot. at 25. However, at trial, OPM Director Thompson testified as to the reasons why the foreign contacts question on the SF-86 is material, for example, one purpose of the question is to determine whether the applicant could be subject to foreign influence. As previously noted, the form's instructions indicate that it is used to assess whether the applicant is vulnerable to exploitation or coercion. Based on this evidence, a reasonable juror could find beyond a reasonable doubt that falsely omitting a foreign contact on the SF-86 is capable of influencing a federal agency's decision regarding whether or not to grant a security clearance to the applicant.

Accordingly, the Court finds sufficient evidence to sustain the jury's verdict on Count Four of the Indictment.

## IV.　MOTION FOR A NEW TRIAL

In the alternative, defendant moves for a new trial pursuant to Federal Rule of Criminal Procedure 33, based on (1) the admission of inadmissible hearsay, (2) an error in the jury instructions, (3) the government's failure to disclose potentially exculpatory information, and (4) the introduction of excerpted portions of audio recordings and text messages in violation of the rule of completeness. Defendant argues that these procedural errors, combined with a lack of sufficient evidence to support his conviction on Counts 2–4, requires a new trial to avoid a miscarriage of justice. Mot. at 27–42.

### A.　Legal Standard

Federal Rule of Criminal Procedure 33 provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." United States v. Alston, 974 F.2d 1206, 1211–12 (9th Cir. 1992) (citation omitted). "The district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." Id. (citation omitted). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000) (internal quotations and citation omitted). "A motion for a new trial is directed to the discretion of the district judge. It should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981) (internal citations omitted). The defendant has the burden to justify the need for a new trial. United States v. Shaffer, 789 F.2d 682, 687 (9th Cir. 1986).

### B.　SA Adkins's Recorded Statements Were Admitted for a Nonhearsay Purpose

Defendant contends that the Court erroneously admitted statements by SA Adkins made during a recorded post-arrest interview of defendant that occurred on March 22, 2017. Mot. at 27–32. Defendant challenges the following italicized statements made by SA Adkins during the interview:

| | |
|---|---|
| SA ADKINS: | *And, just so you know, if it hasn't become clear already, we've talked to multiple people, including the woman who actually handed the passport back to* [Garcia]… |
| DEFENDANT: | Okay. |

| | |
|---|---|
| SA ADKINS: | *. . . and she told us in no uncertain terms that there was only three reasons why she would've returned a passport in that instance. Either one,* [Garcia] *was a documented CI working for HSI, for you.* |
| DEFENDANT: | Okay. |
| SA ADKINS: | *Two, he was a witness to a pending court proceeding involving some sort of case. Or three, he had a letter from a legal attaché. None of those three scenarios . . .* |
| DEFENDANT: | Yeah, yeah, I know that none of those scenarios . . . |
| SA ADKINS: | *So you're aware that none of those three scenarios applied at the time to, to* [Garcia]. |
| DEFENDANT: | Yeah, he never told me that he had any of those things. I know from my end he wasn't documented. I mean there was nothing that really came out of fruition . . . . |

Id., Ex. 2 at 14 (US_034037). The CPB officer to whom SA Adkins refers in this conversation is Officer Velasquez.

Before trial, on April 13, 2018, defendant moved in limine, both on Confrontation Clause and hearsay grounds, to exclude these statements in addition to a statement made by Garcia in a separate recorded conversation. Dkt. 76. Following a pretrial hearing, the Court issued an order granting the motion in limine as to Garcia's statement. Dkt. 85 ("MIL Order"). However, with respect to SA Adkins's statements, the Court denied the motion as moot because the government indicated that it intended to call both SA Adkins and Officer Velasquez to testify. Id. at 6; see Crawford v. Washington, 541 U.S. 36, 59 n. 9 (2004) (noting that the Confrontation "Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it."). Defense counsel agreed at the pretrial hearing that defendant's objections would be rendered moot by virtue of SA Adkins and Officer Velasquez's in-court testimony. MIL Order at 6.

In his post-trial motion, however, defendant contends that the Court failed to reach the argument in his motion in limine—separate from any Confrontation Clause issue—that SA Adkins's statements constituted inadmissible hearsay. Mot. at 28–30. The government argues that by representing to the Court that the issue is moot, defendant withdrew his argument and thereby waived the right to complain that the Court erred in not reaching the issue. Opp'n at 31. The Court declines to find waiver under these circumstances. At the pretrial hearing, defense counsel did not explicitly concede that SA Adkins's in-court testimony would also render any traditional hearsay objections moot. Defendant's unsuccessful motion in limine was therefore sufficient to preserve the issue for the Court's reconsideration.

Nevertheless, the Court finds that SA Adkins' statements were properly admitted as nonhearsay because, as set forth the government's opposition to his motion in limine, the statements were offered not for the truth of the matter asserted but rather (1) to provide context for defendant's own statements, and (2) to show their effect on the listener (here, defendant). As the Ninth Circuit held in United States v. Barragan, 871 F.3d 689, 704–05 (9th Cir. 2017), "the informant's statements on the tapes were not hearsay because, as the court instructed the jury, they were offered only for context, not for 'the truth of the matter asserted'") (quoting Fed. R. Evid. 801(c)(2)) and citing United States v. Valerio, 441 F.3d 837, 844 (9th Cir. 2006); see also United States v. Whitman, 771 F.2d 1348, 1352 (9th Cir. 1985) (holding that informant's "statements were not admitted for their truth but to enable the jury to understand [a coconspirator's] taped statements, and the jury was so instructed."). In addition, a statement offered only "to show the effect on the listener" rather than to prove its truth may be "properly considered as non-hearsay." United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991).

Defendant argues that the recording actually contains two levels of hearsay: SA Adkins's statement quoted another out-of-court statement made to him by Officer Velasquez regarding the three scenarios under which she would have returned Garcia's passport. Mot. at 30. The government maintains that defendant's response to this statement is an important admission that he knew none of the three scenarios applied to Garcia; and, without SA Adkins's statement explaining those scenarios, defendant's admissions would have been meaningless. Accordingly, the government asserts that SA Adkins's statements are necessary to place defendant's own admissions in context. Opp'n at 32–33. Defendant, however, asserts that the government has repeatedly used this statement for its truth—that there were only three reasons why Officer Velasquez would have returned Garcia's passport—rather than for context or to show the effect on the listener. Reply at 24–25.

The Court disagrees with defendant's contention that the government offered SA Adkins's statements to prove the truth of the matter asserted. Officer Velasquez testified at trial and explained for herself the three scenarios under which she would have returned Garcia's passport. Accordingly, the government had no reason to introduce SA Adkins's statement recounting the same exact testimony by Officer Velasquez. Rather, the government properly introduced the statements not for the truth of the matter asserted, but rather to provide necessary context for defendant's own admissions and to show the effect of SA Adkins's questioning on defendant. See Barragan, 871 F.3d at 704–05; Payne, 944 F.2d at 1472.

### C.     Defendant Waived His Right to Object to the Jury Instruction on Count Two

Defendant argues that the Court erred in adopting the government's proposed instruction on Count Two because it did not define the term "agent" as used in 18 U.S.C. § 205(a)(2) according to its well-established common law definition. Mot. at 32–34. However, defendant made no objection to the absence of an instruction defining "agent" at trial, and made no request

for such an instruction. The Court accordingly finds that defendant has waived the argument for the purpose of this motion. Defendant nevertheless argues that the Court should consider the absence of an appropriate instruction in determining whether the government met its constitutional burden of proof as to each element of the crime charged. Mot. at 35 n. 17; Reply at 26. As previously explained, however, the Court concludes that sufficient evidence was presented at trial to prove defendant was acting as Garcia's "agent" within the meaning of 18 U.S.C. § 205(a)(2) when he repeatedly intervened with CBP on Garcia's behalf.

### D. The Government's Failure to Produce Garcia's Text Messages to Defendant Did Not Violate Brady

Defendant next argues that the government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963) by failing to produce certain text messages. Mot. at 35–39. The government produced extensive text messages sent from defendant to Garcia but did not produce many of the corresponding text messages sent from Garcia to defendant during the same time period. Id. at 36. SA Steel filed a declaration explaining that in January 2016, he used a digital forensic tool, Cellbrite, to search Garcia's iPad. Declaration of Chad Steel ¶¶ 3–4. He states that he attempted to retrieve all responsive messages between Garcia and defendant, however these messages had been deleted and therefore some data was not recoverable. SA Steel states that he prepared an extraction report listing all responsive text messages that were retrievable. Id. ¶¶ 3, 5.

The government violates its obligations under Brady, and denies a defendant due process, where the following three elements are met: (1) the evidence in question was favorable to the defendant, meaning that it had either exculpatory or impeachment value; (2) the state "willfully or inadvertently" suppressed the evidence; and (3) the defendant was prejudiced by the suppression. Strickler v. Greene, 527 U.S. 263, 281–82 (1999). First, defendant argues that because his relationship with Garcia was central to all charges, the text messages would have helped to provide the jury with "crucial context" to explain defendant's text messages to Garcia. Mot. at 37. The government maintains that even if these messages could have provided additional context, it is speculative to assert that the information would be exculpatory. And because Garcia was not called to testify, the government notes that the evidence could not have provided a basis for impeachment. Opp'n at 37.

Even assuming the existence of some exculpatory evidence in the deleted messages, there is still no showing of willful or inadvertent suppression or that defendant suffered prejudice. To the extent certain messages from Garcia to defendant were not retrieved, the government maintains that this was a result of the messages having been deleted by Garcia, not because they were willfully or inadvertently suppressed by the government. Opp'n at 38. Although defendant faults SA Steel for not explaining whether there were other retrieval methods

available and why only defendant's messages were recovered, defendant still has not demonstrated that the government's failure to produce the messages was willful or inadvertent.

In addition, defendant has not established that any prejudice resulted from his inability to view the missing text messages. A finding of prejudice "requires that the conduct have some impact on the outcome of the proceeding—i.e., a reasonable probability that the result of the proceeding would have been different or that it so infected the trial with unfairness as to make the resulting conviction a denial of due process." United States v. Wilkes, 662 F.3d 524, 537 (9th Cir. 2011). Defendant has not made the requisite showing here. Although defendant asserts that the messages would have provided important context, there is no indication that they might have been exculpatory. Moreover, defendant presumably had access to the missing text messages because he received them directly from Garcia.

Accordingly, the Court finds no Brady violation based on the government's inability to produce the deleted text messages.

**E.    The Introduction of Some Text Messages and Excerpted Audio Recordings Did Not Violate the Rule of Completeness**

Finally, defendant argues that the government violated the rule of completeness by introducing (1) text messages sent by defendant to Garcia but not the corresponding messages from Garcia to defendant, (2) excerpts of a recorded conversation between defendant and Garcia that occurred on May 12, 2016 and (3) excepts of defendant's recorded interview with SA Adkins and SA V'Dovec on March 22, 2017. Defendant protests that the government introduced "snippets of seemingly incriminatory statements while intentionally omitting the accompanying qualifying or mitigating statements." Mot. 39–43.

Federal Rule of Evidence 106 codified the common law rule of completeness, which is designed to prevent "misunderstanding or distortion" caused by introduction of only part of a document. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988); see also Fed. R. Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."). Rule 106 "does not, however, require the introduction of any unedited writing or statement merely because an adverse party has introduced an edited version." United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014). Moreover, Rule 106 "does not compel admission of otherwise inadmissible hearsay evidence." United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (internal quotation omitted).

Here, defendant's exculpatory statements to law enforcement are inadmissible hearsay and thus cannot be introduced pursuant to Rule 106. As the Ninth Circuit explained, a defendant's "self-inculpatory statements, when offered by the government, are admissions by a

party-opponent and are therefore not hearsay, *see* Fed.R.Evid. 801(d)(2), but the non-self-inculpatory statements are inadmissible hearsay." United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000). If the Court admitted defendant's exculpatory statements at trial, he "would have been able to place his exculpatory statements 'before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids.' " Id. (quoting United States v. Fernandez, 839 F.2d 639, 640 (9th Cir.1988)). Accordingly, the admission of these partial recordings did not violate the rule of completeness.

### E. Conclusion Regarding Defendant's Motion for a New Trial

Having carefully reviewed the evidence presented at trial, and considering defendant's assertions of procedural error, the Court does not find that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." Kellington, 217 F.3d at 1097. Accordingly, in the exercise of its discretion, the Court declines to order a new trial.

## V. CONCLUSION

For the foregoing reasons, defendant's motion for a judgment of acquittal or, in the alternative, a new trial is hereby **DENIED**.

IT IS SO ORDERED.

|  | 00 : 19 |
|---|---|
| Initials of Deputy Clerk | CMJ |

Cc: U.S. Probation
Pretrial Services